ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| AUTOPISTAS METROPOLITANA DE PUERTO RICO, LLC<br><br>Apelante<br><br>v.<br><br>B BILLBOARD NC, LLC; B BILLBOARD CORP.; B BILLBOARD AGGREGATOR, LLC h/n/c B MEDIA GROUP; OFICINA DE GERENCIA DE PERMISOS; e ING. ÁLVARO POLANCO QUIÑONES<br><br>Apelada | **TA2026AP00426** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Civil Núm. BY2025CV05633 (501)<br><br>Sobre: Sentencia Declaratioria; *Injunctio* Estatuario; Entredicho Provisional, *Injunction* Preliminar e *Injunction* Permanente |

Panel integrado por su presidente, el Juez Bonilla Ortiz, la Jueza Martínez Cordero y el Juez Robles Adorno.

Bonilla Ortiz, Juez Ponente

### **SENTENCIA**

En San Juan, Puerto Rico, a 20 de mayo de 2026.

Comparece ante este foro Autopistas Metropolitanas de Puerto Rico, LLC (Metropistas o parte apelante) mediante un recurso de *Apelación* y nos solicita que revoquemos la *Sentencia* emitida el 13 de abril de 2026, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Bayamón.[2] Mediante la *Sentencia* apelada, el foro primario declaró No Ha Lugar la *Moción de Sentencia Sumaria* presentada por la Autoridad de Carreteras (ACT) y Metropistas y dictó sentencia sumaria a favor de B Billboard NC, LLC; B Billboard Corp; B Billboard Aggregator, LLC h/n/c BMedia

---

[1] Ver Orden Administrativa OATA-2026-044 del 4 de mayo de 2026.
[2] *Sentencia*, entrada núm. 167 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Group (BMedia o parte apelada). A tenor, desestimó la totalidad de las reclamaciones promovidas en la *Demanda* instada por la parte apelante. Además, solicita la revisión de la *Orden* emitida el 20 de abril de 2026, notificada al día siguiente, mediante la cual el foro primario denegó la moción de reconsideración, presentada por la parte apelante.[3]

Por los fundamentos que expondremos a continuación, **REVOCAMOS** las *Sentencia* apelada.

**I**

El 27 de octubre de 2025 Metropistas presentó una *Demanda Jurada* sobre entredicho provisional, injunction preliminar y permanente, y sentencia declaratoria contra BMedia; la Oficina de Gerencia de Permisos (OGPe) y el Ingeniero Álvaro Polanco Quiñones (señor Polanco Quiñones).[4] Alegó que BMedia instaló dos (2) vallas publicitarias dentro de áreas sujetas a restricciones legales y reglamentarias. Indicó que las actuaciones de BMedia constituyeron una intromisión ilegal en terrenos que se encuentran bajo su administración y responsabilidad exclusiva. Además, adujo que la construcción se llevó a cabo mediante permisos obtenidos con información falsa e incorrecta. En consecuencia, solicitó que se expidiera un entredicho provisional, injunction preliminar e injunction permanente a los fines de ordenarle a la parte apelada a cesar y desistir de instalar y/o construir las vallas publicitarias. Asimismo, solicitó que se declarara que la instalación y/o construcción de las vallas publicitarias se encuentra dentro de los límites de concesión de

---

[3] *Orden*, entrada núm. 169 en SUMAC.
[4] *Demanda Jurada*, entrada núm. 1 en SUMAC.

Metropistas y que dicha obra incumple con la legislación y reglamentación aplicable. Por otra parte, solicitó que se declarara la nulidad de los permisos de construcción y la revocación de estos. Por último, solicitó que se le ordenara a la parte apelada a desinstalar, demoler y/o remover las vallas publicitarias, así como que se le impusiera el pago de honorarios por temeridad, a tenor con la Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1. Por otro lado, en esa misma fecha, Metropistas también sometió una *Solicitud Urgente de Injunction Estatutario, Entredicho Provisional e Injunction Preliminar*.[5]

Evaluados los escritos, el 28 de octubre de 2025, el foro primario emitió y notificó una *Orden y Citación*.[6] Mediante esta, el foro primario emitió un entredicho provisional a los fines de paralizar total e inmediatamente la construcción e instalación de las vallas publicitarias en los terrenos concesionados a Metropistas en la PR-22.

Tras varios tramites procesales innecesarios pormenorizar, el 25 de noviembre de 2025, BMedia presentó una *Moción Solicitando Determinación del Marco Procesal Aplicable al Injunction Emitido y Otros Asuntos*.[7] Mediante esta, solicitó que el foro primario aclarara si el remedio de injunction se estaba llevando a cabo conforme a la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 57 o al amparo del Artículo 14.1 de La Ley para Reforma del Proceso de Permisos de Puerto Rico,

---

[5] *Solicitud Urgente de Injunction Estatutario, Entredicho Provisional e Injunction Preliminar*, entrada núm. 2 en SUMAC.
[6] *Orden y Citación*, entrada núm. 18 en SUMAC.
[7] *Moción Solicitando Determinación del Marco Procesal Aplicable al Injunction Emitido y Otros Asuntos*, entrada núm. 76 en SUMAC.

Ley Núm. 161-2009, (Ley 161), 23 LPRA sec. 9024. Arguyó que el foro primario emitió un injunction preliminar pero no especificó procesalmente si tal remedio respondía a la Regla 57 de Procedimiento Civil, *supra*, o al Artículo 14.1 de la Ley 161. Sostuvo que tal omisión creó un estado de incertidumbre procesal incompatible con los principios constitucionales que protegen el derecho de toda parte a conocer el marco normativo bajo el cual debe defenderse. Ante ello, solicitó que el foro primario (i) aclarara la vía legal bajo la cual emitió el remedio de injunction preliminar; (ii) activara las garantías procesales correspondientes a la vía identificada; (iii) subsanara los defectos señalados, incluyendo la obligatoriedad de fianza si el procedimiento era bajo la Regla 57 de Procedimiento Civil, *supra*; (iv) reconociera la limitación del Artículo 14.1 de la Ley 161; (v) ordenara la comparecencia del profesional certificante si el tribunal determinaba que aplicaba el Artículo 14.1 de la Ley 161; y (vi) detuviera cualquier trámite adicional hasta que se estableciera de manera clara y definitiva el marco procesal que debía regir el caso.

De ahí, el 5 de diciembre de 2025, la parte apelante presentó *Oposición a "Moción Solicitando Determinación del Marco Procesal Aplicable al Injunction Emitido y Otros Asuntos"*.[8] En esta, indicó que la moción presentada por BMedia no planteaba argumentos nuevos e intentaba reabrir asuntos ya resueltos. Además, indicó que BMedia argumentó erradamente que el injunction

---

[8] *Oposición a "Moción Solicitando Determinación del Marco Procesal Aplicable al Injunction Emitido y Otros Asuntos"*, entrada núm. 85 en SUMAC.

preliminar bajo la Regla 57 de Procedimiento Civil, *supra*, y el injunction estatutario bajo el Artículo 14.1 de la Ley 161 son mecanismos excluyentes e incompatibles. Ante ello, solicitó que se declarara No Ha Lugar la *Moción Solicitando Determinación del Marco Procesal Aplicable al Injunction Emitido y Otros Asuntos*, presentada por BMedia.

Evaluados los escritos, el 12 de diciembre de 2025, notificada el 15 del mismo mes y año, el foro primario emitió y notificó una *Resolución Interlocutoria*.[9] Mediante esta, dispuso que el Art. 14.1 de la Ley 161, bajo el cual se sometió el pleito de epígrafe, contempla la revocación de permisos, así como la paralización y demolición de obras mediante los mecanismos de sentencia declaratoria, injunction, mandamus y cualquier otro aplicable. Sostuvo que fue dentro de ese contexto que se concedió el entredicho provisional a favor de Metropistas. Además, dispuso que la orden de paralización en vigor se emitió conforme a la Regla 57.1 de Procedimiento Civil, *supra*. Determinó que, lo anterior, no era incompatible con los remedios sustantivos disponibles y aspectos procesales establecidos en el Artículo 14.1 de la Ley 161 ni viola derecho constitucional alguno a BMedia. Además, expresó que nada en nuestro ordenamiento impide la acumulación del injunction preliminar bajo la Regla 57 de Procedimiento Civil, *supra*, y los remedios estatutarios bajo el Artículo 14.1 de la Ley 161. Por lo anteriormente expuesto, determinó que procedía ventilar la vista de injunction preliminar como medida

---

[9] *Resolución Interlocutoria*, entrada núm. 92 en SUMAC.

provisional y permitir que el pleito continuara bajo el Art. 14.1 de la Ley 161.

En desacuerdo con lo resuelto, el 29 de diciembre de 2025, BMedia compareció ante este foro mediante un recurso de *certiorari* y auxilio de jurisdicción identificado con el alfanumérico TA2025CE00996.[10] El recurso en cuestión fue atendido por este Tribunal y, mediante *Resolución*, emitida el 12 de enero de 2026, declaró No Ha Lugar la *Moción Urgente en Auxilio de Jurisdicción y Solicitud de Orden de Suspensión Provisional*.[11] Asimismo, mediante *Sentencia* emitida y notificada el 12 de febrero de 2026, este foro expidió el auto de *certiorari* y confirmó la *Resolución Interlocutoria,* emitida el 12 de diciembre de 2025, notificada el 15 del mismo mes y año.[12] En consecuencia, declaró No Ha Lugar una solicitud de paralización sometida por BMedia el 4 de febrero de 2026. Conviene mencionar que el *Mandato* fue notificado el 21 de abril de 2026.[13]

Luego, el 9 de enero de 2026, Metropistas presentó una *Demanda Enmendada,* a los fines de añadir a ACT como parte demandante.[14] En respuesta, el 30 de enero de 2026, la OGPe presentó su *Contestación a Demanda Enmendada*.[15] Por su parte, el 11 de noviembre de 2026,

---

[10] *Certiorari*, entrada núm. 99 en SUMAC.
[11] *Resolución*, entrada núm. 5 en SUMAC TA en el alfanumérico TA2025CE00966.
[12] *Sentencia*, entrada núm. 9 en SUMAC TA en el alfanumérico TA2025CE00966.
[13] *Mandato*, entrada núm. 10 en SUMAC TA en el alfanumérico TA2025CE00966.
[14] *Demanda Enmendada*, entrada núm. 102 en SUMAC TA.
[15] *Contestación a Demanda Enmendada*, entrada núm. 105 en SUMAC.

BMedia presentó una *Contestación a Demanda Enmendada, Otros Extremos y Reservas.*[16]

Posteriormente, el 13 de febrero de 2026, Metropistas y ACT instaron una *Moción de Sentencia Sumaria.*[17] En primer lugar, enumeraron cuarenta y siete (47) hechos que, a su juicio, no estaban en controversia. De igual forma, esbozaron que los únicos asuntos litigiosos y en controversia eran si procedía (i) la revocación de los permisos de construcción; (ii) la paralización de las obras en controversia; y (iii) la demolición de las obras construidas. A tenor, solicitó que se dictara sentencia sumaria anulando y revocando los permisos de construcción, paralizando las obras en controversia, y ordenando la demolición de las obras.

Luego de varios tramites procesales innecesarios pormenorizar, el 19 de marzo de 2026, la OGPe instó una *Moción en Oposición a la Solicitud de Sentencia Sumaria de Autopistas Metropolitanas de Puerto Rico.*[18] En esencia, adujo que existían controversias en cuanto a hechos materiales, los cuales impedían resolver por sentencia sumaria sin dar un día en corte. Ante ello, solicitó que se declarara No Ha Lugar la *Moción de Sentencia Sumaria*, instada por ACT y Metropistas.

Por su parte, en esa misma fecha, BMedia presentó una *Moción en Oposición a Solicitud de Sentencia Sumaria y Solicitud de que se Dicte Sentencia Sumaria a favor de la Parte Demandada.*[19] En esencia, alegó que la parte

---

[16] *Contestación a Demanda Enmendada, Otros Extremos y Reservas*, entrada núm. 111 en SUMAC.
[17] *Moción de Sentencia Sumaria,* entrada núm. 117 en SUMAC.
[18] *Moción en Oposición a la Solicitud de Sentencia Sumaria de Autopistas Metropolitanas de Puerto Rico*, entrada núm. 156 en SUMAC.
[19] *Moción en Oposición a Solicitud de Sentencia Sumaria y Solicitud de que se Dicte Sentencia Sumaria a favor de la Parte Demandada*, entrada núm. 158 en SUMAC.

apelante no acreditó que la OGPe fue inducida a error mediante la omisión o falsedad de un hecho material no conocido por la agencia al momento de adjudicar. Por otra parte, adujo que, en atención a que el récord se encontraba lo suficientemente desarrollado, se adjudicara la controversia sumariamente a su favor desestimando, con perjuicio, toda teoría de fraude, información falsa o inducción a error basada en hechos, comentarios, clasificaciones y documentos que ya obraban en el récord y que fueron ponderados por la OGPe al momento de emitir su determinación. En consecuencia, solicitó que se declarara No Ha Lugar la *Moción de Sentencia Sumaria* presentada por la parte apelante. Asimismo, solicitó que se declarara que la parte apelante no demostró, mediante prueba admisible e incontrovertida, la inexistencia de controversias materiales genuinas ni la procedencia de la revocación de los permisos, la paralización de las obras o la demolición solicitada. Por último, solicitó que se determinara que la teoría de fraude, información falsa o inducción a error invocada en este caso constituía un intento improcedente de reabrir colateralmente el mérito de una determinación administrativa final y firme. En la alternativa, solicitó que se dictara sentencia sumaria a su favor.

Evaluados los escritos, el 13 de abril de 2026, notificada al día siguiente, el foro primario emitió *Sentencia*.[20] En esta, el foro primario dispuso que no procedía la solicitud sumaria promovida por Metropistas y que procedía dictar sentencia sumaria a favor de

---

[20] *Sentencia*, entrada núm. 167 en SUMAC.

BMedia. Expresó que los hechos medulares que la parte apelante pretendía caracterizar como información falsa o incorrecta formaban parte del expediente administrativo que la OGPe tuvo ante sí al momento de adjudicar los permisos impugnados. Asimismo, determinó que la presunción de corrección y legalidad que cobija las determinaciones finales bajo la Ley 161 no fueron rebatidas y que el remedio extraordinario del Artículo 14.1 no autoriza reabrir tardíamente el mérito de permisos finales y firmes por una divergencia interpretativa. Por lo anteriormente expuesto, declaró No Ha Lugar la *Moción de Sentencia Sumaria* presentada por ACT y Metropistas y dictó sentencia sumaria a favor de Bmedia. En consecuencia, desestimó la totalidad de las reclamaciones promovidas en la *Demanda*, al amparo del Artículo 14.1 de la Ley 161, incluyendo las solicitudes de revocación de permisos, paralización de obras y demolición. Asimismo, ordenó el cierre y archivo del caso.

Inconforme, el 16 de abril de 2026, Metropistas presentó una *Urgente moción de reconsideración para que se deje sin efecto la sentencia dictada por la falta de jurisdicción e incumplimiento con la Regla 36.3 de Procedimiento Civil.*[21] Esbozó que el foro primario dictó *Sentencia* sumariamente sin jurisdicción para ello y desestimó las reclamaciones promovidas en la *Demanda Enmendada*. Sobre el particular, sostuvo que el foro primario actuó sin jurisdicción para disponer del caso al no haber recibido el mandato correspondiente por

---

[21] *Urgente moción de reconsideración para que se deje sin efecto la sentencia dictada por la falta de jurisdicción e incumplimiento con la Regla 36.3 de Procedimiento Civil*, entrada núm. 168 en SUMAC.

parte del Tribunal de Apelaciones como resultado de la *Sentencia*, dictada el 12 de febrero de 2026, en el caso identificado con el alfanumérico TA2025CE00966. Por otra parte, indicó que dictar sentencia sumaria a favor de la parte apelada era contrario a la Regla 36.3 de Procedimiento Civil 32 LPRA Ap. V, R.36.3, y constituía una violación al debido proceso de ley en su vertiente procesal. En consecuencia, solicitó que se reconsiderara la *Sentencia* dictada y se dejara sin efecto en todos sus aspectos bajo el fundamento de falta de jurisdicción, violación al debido proceso de ley, e incumplimiento con la Regla 36.3 de Procedimiento Civil, *supra*. Además, solicitó que, en caso de que el foro primario considerara el remedio de la desestimación, se le brindara la oportunidad de replicar.

En respuesta, el 21 de abril de 2025, el foro de instancia emitió y notificó una *Orden* mediante la cual declaró No Ha Lugar la *Urgente moción de reconsideración para que se deje sin efecto la sentencia dictada por la falta de jurisdicción e incumplimiento con la Regla 36.3 de Procedimiento Civil*, presentada por la parte apelante.[22]

Aun inconforme, el 27 de abril de 2025, la parte apelante acudió ante nos mediante un recurso de apelación en el cual esgrimió la comisión de los siguientes tres (3) errores:

> ERRÓ EL TPI AL NO DICTAR SENTENCIA SUMARIA A FAVOR DE LA DEMANDANTE METROPISTAS, Y EN VEZ EMITIR SENTENCIA A FAVOR DE LOS DEMANDADOS, A PESAR DE QUE NO HAY CONTROVERSIA EN TORNO A QUE LOS PERMISOS DE CONSTRUCCIÓN SE OBTUVIERON CON INFORMACIÓN INCORRECTA Y FALSA Y QUE LAS OBRAS INCUMPLEN CON LA LEGISLACIÓN ESTATAL Y FEDERAL APLICABLE Y SUPONEN UN RIESGO INMINENTE A LA SEGURIDAD VIAL.

---

[22] *Orden,* entrada núm. 169 en SUMAC.

> ERRÓ EL TPI AL NO DICTAR SENTENCIA SUMARIA A FAVOR DE LA DEMANDANTE METROPISTAS, Y EN VEZ EMITIR SENTENCIA A FAVOR DE LOS DEMANDADOS, A PESAR DE QUE ÉSTOS INCUMPLIERON CON LA REGLA 36 DE PROCEDIMIENTO CIVIL, ENTRE OTRAS RAZONES POR NO HABER PRESENTADO PRUEBA ALGUNA PARA REBATIR LOS HECHOS INCONTROVERTIDOS PROPUESTOS POR METROPISTAS.
>
> ERRÓ EL TPI AL EMITIR SENTENCIA Y DESESTIMAR LA DEMANDA ENMENDADA, TODA VEZ QUE CARECÍA DE JURISDICCIÓN AL NO HABER RECIBIDO EL MANDATO DEL TRIBUNAL DE APELACIONES TRAS LA SENTENCIA EMITIDA POR DICHO FORO EL 12 DE FEBRERO DE 2026 EN EL CASO NÚM. TA-2025-CE00966.

Junto al recurso, la parte apelante presentó una *Urgente Solicitud en Auxilio de Jurisdicción*.[23] De ahí, mediante *Resolución* del 28 de abril de 2026, declaramos Ha Lugar el auxilio de jurisdicción y se ordenó la paralización de las obras de construcción.[24] Por otro lado, concedimos a la parte apelada diez (10) días, contados a partir de la fecha de presentación del recurso de epígrafe, para oponerse y expresarse sobre los méritos del recurso. El 7 de mayo de 2026, la parte apelada presentó una *Moción de Prórroga* mediante la cual solicitó una prórroga de diez (10) días para presentar su oposición a los méritos del recurso.[25] Mediante *Resolución* emitida el 8 de mayo de 2026, se le concedió a la parte apelada hasta el 14 de mayo de 2026 para presentar su recurso en oposición.[26] En cumplimiento con nuestra orden, el 8 de mayo de 2026, la OGPe presentó *Oposición de la Oficina de Gerencia de Permisos* y, el 14 de mayo de 2026, BMedia presentó *Alegato de la Parte Apelada* y el señor Polanco Quiñones su *Alegato en Oposición a Apelación*.[27]

---

[23] *Urgente Solicitud en Auxilio de Jurisdicción*, entrada núm. 2 en SUMAC TA.
[24] *Resolución*, entrada núm. 4 en SUMAC TA.
[25] *Moción de Prórroga*, entrada núm. 7 en SUMAC TA.
[26] *Resolución*, entrada núm. 8 en SUMAC TA.
[27] *Alegato de la Parte Apelada*, entrada núm. 10 en SUMAC TA.

Contando con la comparecencia de todas las partes, procedemos a atender el recurso de epígrafe. Veamos.

## II

### A

El mandato es "una orden de un tribunal superior a uno de inferior jerarquía, notificándole haber revisado el caso en apelación y enviándole los términos de su sentencia". *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 300-301 (2012). Dispuesto de otra forma, el mandato es "el medio oficial que posee un tribunal apelativo para comunicar a un tribunal inferior la disposición de la sentencia objeto de revisión y para ordenarle el cumplimiento de lo acordado." *Mejías et al. v. Carrasquillo et al.*, *supra*, 301; *Rosso Descartes v. BGF*, 187 DPR 184, 191-192 (2012); *Colón y otros v. Frito Lay*, 186 DPR 135 (2012); *Pueblo v. Tribunal de Distrito*, 97 DPR 241, 246 (1969). Su propósito principal es lograr que "el tribunal inferior actúe en forma consistente con los pronunciamientos del tribunal apelativo". *Id.* Una vez recibido el mandato, el tribunal inferior debe limitarse a dar cumplimiento a lo ordenado, que constituye la ley del caso entre las partes. *Pueblo v. Tribunal de Distrito*, *supra*; *Martínez v. Tribunal de Distrito*, 69 DPR 552, 555 (1949). El caso o cuestión que estaba ante la consideración de dicho foro finaliza para todos los efectos y el tribunal inferior readquiere la facultad de continuar con los procedimientos según dictaminado por el tribunal apelativo. *Mejías et al. v. Carrasquillo et al.*, *supra*; *Pérez, Ex parte v. Depto. De la Familia*, 147 DPR 556, 571 (1999).

Por otra parte, la Regla 45(B) del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 69, 215 DPR __ (2025) dispone lo siguiente:

> (B) La expedición del auto de certiorari suspenderá los efectos de la sentencia y los procedimientos en el Tribunal de Primera Instancia, salvo lo dispuesto en el inciso (C) de esta regla o cuando mediare una orden en contrario expedida por el Tribunal de Apelaciones, motu proprio o a petición de parte.

Es decir, que una vez se expida un auto de certiorari, los procedimientos ante el foro primario quedan suspendidos salvo medie alguna de las excepciones enumeradas en la Regla. Precisa señalar que, una vez se paralizan los procedimientos en el foro de instancia, éste pierde su jurisdicción para continuar atendiendo los asuntos relacionados a las controversias planteadas en el Tribunal de Circuito. *Pérez, Ex parte v. Dpto. de la Familia*, 147 DPR 556, 570 (1999). Si el tribunal de instancia resolviese o actuase sobre algún asunto paralizado, dicha actuación sería nula. *Id*. Para que el tribunal de inferior jerarquía adquiera nuevamente jurisdicción, es decir, poder y facultad para continuar con los procedimientos, es necesario que el Tribunal de Circuito le remita el mandato correspondiente. *Id*.

### III

En el caso de autos, el foro de instancia emitió una *Sentencia* mediante la cual dictó sentencia sumaria a favor BMedia. En consecuencia, desestimó la totalidad de las reclamaciones promovidas en la *Demanda* instada por la parte apelante. Ante ello, Metropistas acude ante esta Curia tras su inconformidad con el dictamen y, mediante sus primeros dos (2) señalamientos de error,

nos invita a concluir que el foro *a quo* incidió al dictar sentencia sumaria a favor de BMedia. Por otro lado, mediante su último y *tercer* señalamiento de error, Metropistas alega que erró el foro de instancia al emitir *Sentencia* y desestimar la *Demanda Enmendada*, toda vez que carecía de jurisdicción al no haber recibido el mandato del Tribunal de Apelaciones tras la *Sentencia*, emitida por este foro el 12 de febrero de 2024, en el caso identificado con el alfanumérico TA2025CE00966. Estamos de acuerdo. Veamos.

Conforme surge del expediente ante nuestra consideración, el 29 de diciembre de 2025, BMedia acudió ante este foro mediante un recurso de *certiorari* y auxilio de jurisdicción, en el caso identificado con el alfanumérico TA2025CE00996, en el cual recurría de una *Resolución Interlocutoria*, emitida el 12 de diciembre de 2025, notificada el 15 del mismo mes y año, por el foro primario. El recurso en cuestión fue atendido por este Tribunal y, mediante *Resolución*, declaró No Ha Lugar el auxilio de jurisdicción. Asimismo, mediante *Sentencia*, emitida y notificada el 12 de febrero de 2026, este foro expidió el auto de *certiorari* y confirmó la *Resolución Interlocutoria,* emitida el 12 de diciembre de 2025, notificada el 15 del mismo mes y año. Conviene mencionar que el *Mandato* fue notificado el 21 de abril de 2026. Pese a lo anterior, el foro primario emitió la *Sentencia* apelada el 13 de abril de 2026, notificada al día siguiente, es decir, antes de que este Tribunal emitiera el *Mandato* correspondiente a la *Sentencia* emitida el 12 de febrero de 2026.

Conforme a la normativa esbozada previamente, la Regla 45(B) del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 69, 215 DPR __ (2025) dispone que, una vez se expide un auto de certiorari, los procedimientos ante el foro primario quedan suspendidos salvo medie alguna de las excepciones mencionadas en dicha Regla. Precisa señalar que, una vez se paralizan los procedimientos en el foro de instancia, éste pierde su jurisdicción para continuar atendiendo los asuntos relacionados a las controversias planteadas en el Tribunal de Circuito. *Pérez, Ex parte v. Dpto. de la Familia*, 147 DPR 556, 570 (1999). Para que el tribunal de inferior jerarquía adquiera nuevamente jurisdicción, es decir, poder y facultad para continuar con los procedimientos, es necesario que el Tribunal de Circuito le remita el mandato correspondiente. *Id*. Es decir, la remisión de un mandato incide directamente sobre las facultades jurisdiccionales del tribunal primario en cuanto al asunto resuelto, por lo que hasta tanto no lo reciba, toda actuación que efectúe dentro de dicho periodo se reputa como nula.

A tenor con lo antes expuesto, forzoso es concluir que, dado que el Tribunal de Primera Instancia emitió la *Sentencia* apelada sin contar con jurisdicción para ello, dicho dictamen se considera nulo. Lo anterior, debido a que, la expedición del recurso de *certiorari* en el caso identificado con el alfanumérico TA2025CE00996 por el Tribunal de Apelaciones, tuvo el efecto de que el foro primario perdiera su facultad para continuar atendiendo los asuntos relacionados a las controversias

planteadas ante este foro hasta tanto no se remitiera el correspondiente mandato. Puntualizamos que el foro de instancia no readquirió jurisdicción, es decir, poder y facultad para continuar con los procedimientos, hasta la fecha en que este Tribunal remitió el mandato correspondiente, a saber, el día 21 de abril de 2026. Toda actuación realizada por el Tribunal de Primera Instancia antes de dicha fecha se considera nula. En consecuencia, se cometió el *tercer* error señalado por la parte apelante.

En consideración al análisis que realizamos con el propósito de atender el *tercer* señalamiento de error, consideramos que los planteamientos formulados en los primeros dos (2) errores esgrimidos por la parte apelante no requieren ni ameritan discusión ulterior. Así las cosas, corresponde revocar la *Sentencia*, emitida el 13 de abril de 2026, notificada al día siguiente. En consecuencia, corresponde devolver el caso ante la consideración del Tribunal de Primera Instancia, para la continuación de los procedimientos.

**IV**

Por los fundamentos que anteceden, se revoca la *Sentencia* emitida el 13 de abril de 2026, notificada al día siguiente, y se devuelve el caso al foro primario para la continuación de los procedimientos, en armonía con lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones